```
              IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF NEW JERSEY
                        CAMDEN VICINAGE
```

| | |
|---|---|
| K.P., <br><br>         Plaintiff, <br><br>    v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br>         Defendant. | Civil No. 20-2831 (RMB) <br><br> **MEMORANDUM OPINION & ORDER** |

**APPEARANCES**

RICHARD LOWELL FRANKEL
BROSS & FRANKEL, PA
725 KENILWORTH AVENUE
CHERRY HILL, NEW JERSEY 08002

    *On behalf of Plaintiff*

ALLISON GRANGER
EMILY BRESLIN MARKOS
SOCIAL SECURITY ADMINISTRATION
300 SPRING GARDEN STREET, SIXTH FLOOR
PHILADELPHIA, PENNSYLVANIA 19123

    *On behalf of Defendant*

**RENÉE MARIE BUMB, United States District Judge**

This matter comes before the Court upon an appeal filed by Plaintiff K.P., seeking judicial review of the final determination of the Commissioner of the Social Security Administration (the "Commissioner" and the "SSA," respectively), which denied Plaintiff's applications for Social Security Disability benefits.

For the reasons set forth herein, the Court will vacate the decision of the Administrative Law Judge ("ALJ") and remand for proceedings consistent with this Opinion.

I.   **PROCEDURAL HISTORY**

On July 27, 2015, Plaintiff protectively filed an application for Social Security Disability benefits under Title II and Title XVI of the Social Security Act (the "Act"), alleging an onset date of disability beginning June 30, 2015. [R. at 10.] The claims were first denied on November 2, 2015, and again denied upon reconsideration on May 25, 2016. [Id.] On July 29, 2016, Plaintiff filed a written request for a hearing before an ALJ. [Id.] That hearing took place on October 17, 2018. [Id.] Plaintiff was represented by an attorney, Jennifer Stonehedge, at that hearing, at which the ALJ heard testimony from both Plaintiff and David Festa, an impartial vocational expert. [See R. at 32-79.]

On December 5, 2018, the ALJ issued a decision denying Plaintiff's claim for benefits, based upon his finding that Plaintiff was not disabled and could perform work in certain occupations, such as office helper, photocopy machine operator, and night-shift cleaner/housekeeper. [R. at 19.] On January 9, 2020, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision final. [R. at 1.] Plaintiff now seeks this Court's review pursuant to 42 U.S.C. § 405(g).

**II.   STANDARD OF REVIEW**

When reviewing a final decision of an ALJ with regard to disability benefits, a court must uphold the ALJ's factual decisions if they are supported by "substantial evidence." Hess v. Comm'r of Soc. Sec., 931 F.3d 198, 208 n.10 (3d Cir. 2019); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Cons. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Albert Einstein Med. Ctr. v. Sebelius, 566 F.3d 368, 372 (3d Cir. 2009).

In addition to the "substantial evidence" inquiry, the court must also determine whether the ALJ applied the correct legal standards. See Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000). The Court's review of legal issues is plenary. Hess, 931 F.3d at 208 n.10 (citing Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011).

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  The Act further states,

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i-v). The claimant bears the burden of proof at steps one through four, whereas the Commissioner bears the burden of proof at step five. Hess, 931 F.3d at 201. Recently, the Third Circuit described the ALJ's role in the Commissioner's inquiry at each step of the analysis:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, he is not disabled. Id. Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. Id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" Id. §§ 404.1520(c), 416.920(c). If the claimant lacks such an impairment, he is not disabled. Id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If he has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations." [Smith v. Comm'r of Soc. Sec.], 631 F.3d [632, 634 (3d Cir. 2010)]. If

4

> the claimant's impairments do, he is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "[RFC] is the most [he] can still do despite [his] limitations." Id. §§ 404.1545(a)(1), 416.945(a)(1). If the claimant can perform his past relevant work despite his limitations, he is not disabled. Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If he cannot, the ALJ moves on to step five.
>
> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] . . . age, education, and work experience." Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If he cannot, he is disabled.

Hess, 931 F.3d at 201–02 (some alterations omitted).

### III. FACTUAL BACKGROUND

The Court recites only the facts that are necessary to its determination on appeal, which is narrow. Plaintiff, who was born on May 5, 1970, was 45 years old on the alleged onset date and 48 years old at the time of her administrative hearing on October 17, 2018. [See R. at 18, 34, 47.] Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2020, meaning that she must establish disability on or before that date to be entitled to benefits. [See R. at 12.]

5

A.  **Plaintiff's Educational and Work History**

Plaintiff completed high school in 1988. [R. at 189.] In the fifteen years prior to her hearing, Plaintiff's only job was as a group worker at Oaks Integrated. [R. at 43-44.] She testified that her role consisted of "work[ing] with a group of developmentally challenged adults," assisting them in learning "vocational skills and trying to teach new skills, going out on work contracts to do basic household office cleaning duties." [R. at 44.] She demonstrated to her clients how to physically perform their jobs and taught them how to navigate the process of applying for and interviewing for such jobs. [R. at 44.] The role also required Plaintiff to drive her group of clients to and from job locations. [R. at 46.] She has not worked at all since leaving her job at Oaks Integrated in June 2015. [R. at 48.]

B.  **Plaintiff's Medical History**

Plaintiff suffers from both physical and mental ailments. Her physical condition relevant to this case are degenerative disc disease with radiculopathy. [See R. at 13; Docket No. 11, at 12-15.] This injury first appeared in approximately early 2013, when, on February 6, 2013, Plaintiff went to Lourdes Medical Associates with a pain in her lower left leg. [R. at 375.] An MRI revealed that she had degenerative changes and disc bulges in her lower thoracic spine. [R. at 42.] Plaintiff received treatment for this pain from Dr. Stuart Kushner, who eventually diagnosed her with

6

sciatica, lumbosacral spondylosis, and back pain. [R. at 387.] An MRI performed on May 24, 2013, showed "multilevel disc desiccation and loss of disc height with relative sparing along L2, L2-L3, and L4-L5." (R. at 385-87.] Despite receiving physical therapy, Plaintiff testified that she still experiences issues from those injuries. [R. at 42-43.] She also testified that pain in her back and left leg have made it difficult for her to walk, lift, and perform other everyday tasks that require more strength. [R. at 65-66.] Furthermore, Plaintiff contends that the pain caused by these diagnoses "[w]orsened with prolonged sitting." [R. at 387.]

Plaintiff also suffers from mental health conditions, including bipolar disorder and anxiety disorder. [See R. at 12, 593.] These conditions caused a twelve-week medical leave prior to the alleged onset date; a thirteen-day inpatient hospitalization; several long bouts of depression that rendered her bedridden for weeks or months at a time; difficulty functioning, feeling overwhelmed, confused, indecisive, and anxious; and lacking motivation, interest, focus, and concentration to do household chores and attend to her personal needs. [See, e.g., R. at 48, 324, 330, 411-12, 487, 499.] Plaintiff testified that her symptoms are not always present, but that it can be hard to predict when and how they will appear. [See R. at 60-61.]

**C. The ALJ's Decision**

At step one, the ALJ found that Plaintiff had not engaged in

7

gainful activity since the alleged onset date of June 30, 2015. [R. at 12.]

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: bipolar disorder and anxiety disorder. [Id.] The ALJ also found that Plaintiff's degenerative disc disease with radiculopathy and status-post right knee sprain/strain were non-severe. [R. at 13.]

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. [R. at 13-14.]

At step four, the ALJ found that Plaintiff had the RFC

> to perform a full range of work at all exertional levels but with the following non-exertional limitations: she is able to understand and remember simple, routine instructions and carry-out repetitive tasks; make simple, work-related decisions and use common sense; deal with minor or few changes in a routine work setting; have non-collaborative interaction with co-workers, but no interaction with the general public; and is expected to be off-task 5% of the time in addition to normal breaks and absent 1 day per month.

[R. at 14.] The ALJ also found that Plaintiff was "unable to perform any past relevant work due to her RFC." [R. at 18.]

At step five, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." [Id.] Therefore, the ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, from June 30, 2015, through the date of this decision." [R.

8

at 19.]

**IV. DISCUSSION**

Plaintiff raises four arguments in support of remanding this case. First, she argues that, regardless of the severity or non-severity of her physical impairments, the ALJ erroneously failed to consider the impairments in formulating Plaintiff's RFC at step four.[1] Second, Plaintiff argues that the ALJ assigned improper limitations for off-task and absenteeism at step four. Third, Plaintiff argues that the ALJ did not properly consider opinion evidence. And fourth, Plaintiff argues that the ALJ failed to properly assess Plaintiff's GAF scores. The Court will address each argument in turn.

**A. Failure to consider physical impairments in formulating RFC**

At step two, the ALJ found that Plaintiff's physical impairments of degenerative disc disease with radiculopathy and status-post right knee sprain/strain were non-severe. [R. at 13.]

---

[1] Plaintiff also argues that the ALJ erroneously held that Plaintiff's degenerative disc disease with radiculopathy and sciatica was non-severe. [Docket No. 11, at 12-13.] However, Plaintiff seemingly concedes that, even if this were true, it would be harmless error since the ALJ did find, at step two, that Plaintiff suffered severe mental impairments. [See id. at 14 n.1.] The Court agrees that, even if the ALJ erred in this regard, doing so was harmless. See Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 145 (3d Cir. 2007) (holding that an ALJ's finding of non-severity is harmless where the ALJ finds in the claimant's favor at step two). Therefore, the Court will not address the severity or non-severity of Plaintiff's physical impairments.

9

As noted above, the Court need not address whether that finding was erroneous. However, Plaintiff's first argument for remand is that, regardless of whether her physical impairments are severe or non-severe, the ALJ erred by not addressing those impairments in the formulation of Plaintiff's RFC. [Id. at 14-15.]

Per 20 C.F.R. § 416.945(a)(2), an ALJ must "consider all" of a claimant's impairments, including those "that are not 'severe.'" Plaintiff argues that "[t]his did not happen in the present case." [Docket No. 11, at 14.] In fact, in formulating Plaintiff's RFC, the ALJ noted that Plaintiff "experiences issues with her back and groin, which make it difficult for her to clean and lift" and that she had suffered "injuries to her knee." [R. at 15.] Beyond that and broad mentions of "consideration of the evidence" generally, the ALJ focused entirely on Plaintiff's mental impairments. [R. at 15-18.]

Plaintiff argues that the ALJ's conclusion that Plaintiff was capable of "perform[ing] a full range of work at all exertional levels" indicates that the ALJ did not adequately consider her physical impairments. [See Docket No. 11, at 13.] She points to medical evidence showing that the pain caused by her non-severe physical impairments "worsened with prolonged sitting." [R. at 385-87.] Moreover, Plaintiff testified that her physical impairments can "actually prevent[]" her from "lifting and . . . certain tasks of cleaning [or] that require more strength than

10

other things." [R. at 65-66.] The ALJ did not cite any specific evidence to suggest that Plaintiff's alleged physical impairments would have no impact on her exertional capabilities other than, perhaps, the fact that Plaintiff had not sought treatment for her physical impairments in several years. [See R. at 13 (deeming physical limitations non-severe because, in part, Plaintiff has not sought treatment for them since their onset dates).]

This Court agrees with Plaintiff that the ALJ did not adequately consider Plaintiff's physical limitations in determining Plaintiff's RFC. Although the ALJ made passing comments to them and the record as a whole, it appears that the ALJ's decision was exclusively informed by the fact that Plaintiff's physical impairments were non-severe. The C.F.R. requires, however, that the limitations caused by non-severe impairments should be considered in formulating a claimant's RFC. The ALJ's decision in this case does not indicate that that requirement was met. This potential omission is not harmless, as Plaintiff's physical impairments could affect her RFC, which could in turn affect which, if any, jobs exist that Plaintiff could perform. Moreover, "[t]he Third Circuit has held that access to the Commissioner's reasoning is [] essential to a meaningful court review." Sanford v. Comm'r of Soc. Sec., Civil Action No. 13-0366 NLH, 2014 WL 1294710, at *2 (D.N.J. Mar. 28, 2014) (citing Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978)); see also Stockett

11

v. Comm'r of Soc. Sec., 216 F. Supp. 3d 440, 456 (D.N.J. 2016) ("The Third Circuit 'requires the ALJ to set forth the reasons for his decision.'") (quoting Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 123 (3d Cir. 2000)) (Bumb, D.J.). This is true even if the ALJ's decision remains the same on remand, as long as it is explained. Therefore, the Court will remand this matter on that basis.

    B.    **Adequacy of off-task and absenteeism limitations**

Plaintiff next argues that the ALJ's allowance for only 5% time off-task and one absence per month in Plaintiff's RFC did not align with the evidence and that the ALJ did not pose adequate hypotheticals to the vocational expert ("VE"). [Docket No. 11, at 15-17.] The VE testified that the industry standard for off-task tolerance is 10%. [R. at 74.] Meanwhile, the ALJ determined that Plaintiff would be off-task 5% of the time in addition to normal breaks. [R. at 14.] Plaintiff argues that the VE's response to a hypothetical of needing "an additional 30 to 40 minutes of an unpredictable breaktime in addition to regular breaks and lunches." [R. at 74.] The VE responded that such a requirement would put Plaintiff off-task "close to . . . 10%." [Id.] Plaintiff argues that this question and answer suggest that "the VE testified that 30-40 minutes in addition to breaks would preclude work." [Docket No. 11, at 16.] Plaintiff argues that remand is required to clarify the VE's testimony, citing a case in which there was

12

unclear testimony as to whether regular breaks and lunches was included in the VE's time-off task calculation. [Id. (citing Kirby v. Comm'r of Soc. Sec., Civil No. 16-5159 (RMB) (D.N.J. Sept. 29, 2017), Slip Op. at 16).] This Court disagrees, as the testimony was clear. The VE was explicitly asked a hypothetical that contemplated Plaintiff being off-task for a certain amount of time "in addition to regular breaks and lunches." [R. at 74.] There is no confusion about the VE's testimony with respect to this hypothetical.

Plaintiff also argues that the ALJ's determination that Plaintiff required only one absence per month due to her impairments was in error. [Docket No. 11, at 15.] However, the ALJ's analysis of this matter was thorough, clearly explained, and well supported by the record evidence. [See R. at 14-18.] Based on that detailed analysis, this Court is not in a position to rule that a "reasonable adjudicator would be compelled to conclude to the contrary," which is the standard that applies here. See Nasrallah v. Barr, 140 S. Ct. 1683, 1692 (2020). Therefore, that aspect of Plaintiff's argument is denied. Furthermore, because the ALJ did not err in finding that Plaintiff required only one absence per month, Plaintiff's argument that the VE was not presented with adequate hypotheticals also fails.

## C. Consideration of opinion evidence

Plaintiff next argues that the ALJ failed to properly consider

the opinion evidence. [Docket No. 11, at 17-20.] Specifically, Plaintiff argues that the ALJ erred in giving Dr. Victor Nemeroff's opinion little weight because it was "inconsistent with his treatment records, which indicate that the claimant is stable with the use of medications and merely notes the possibility of decompensation." [R. at 17.] The Court agrees with Defendant's argument that the ALJ had a sufficient basis for affording Dr. Nemeroff's opinion little weight. Between Dr. Nemeroff's own treatment notes, [R. at 17, 515-17, 554, 556, 558, 560, 564, 575, 578], as well as evidence in the record, the ALJ was well within their bounds to give little weight to Dr. Nemeroff's opinion. See Russo v. Astrue, 421 F. App'x 184, 191 (3d Cir. 2011) (finding the rejection of an opinion to be justified where "it was inconsistent with, and unsupported by, other substantial evidence in the case record"). Therefore, the Court will not remand on that basis.

Similarly, Plaintiff argues that the ALJ erroneously gave little weight to Dr. Stuart Kushner's opinion. [Docket No. 11, at 18-20.] Specifically, the ALJ afforded Dr. Kushner's opinion little weight for two reasons. First, because Dr. Kushner's opinion opined on an issue reserved for the Commissioner. [R. at 17.] Second, because the opinion "only states that the claimant could not perform her past work and does not speak to the claimant's ability to work in general." [Id.] While it is true that an ALJ may not discount an opinion solely because it reaches an issue

14

reserved for the Commissioner, that does not preclude the ALJ from discounting the opinion for other, valid reasons. See Sheryl W. v. Comm'r of Soc. Sec., Civil No. 19-19127 (RBK), 2020 U.S. Dist. LEXIS 232161, at 19-20 (D.N.J. Dec. 10, 2020). Here, the ALJ offered an entirely separate, legitimate reason for discounting Dr. Kushner's opinion. [R. at 17.] Namely, Dr. Kushner's opinion stated that Plaintiff could not perform her past work, but did not say anything about any other work that she might be able to perform. [Id.] Not only is it within the ALJ's province to limit the weight given to such an opinion, but in this case, even if the ALJ erred in doing so, the error was harmless because the ALJ in fact implicitly adopted Dr. Kushner's opinion by finding that Plaintiff is unable to perform any past relevant work. [R. at 18.] Therefore, the Court will not remand on that basis.

### D. Assessment of Plaintiff's GAF scores

Finally, Plaintiff argues that the ALJ erroneously decided to not give Plaintiff's GAF scores "any significant weight" because the American Psychiatric Association's DSM-V, published in 2013, abandoned the use of GAF due to its "conceptual lack of clarity" and "questionable psychometrics in routine practice." [R. at 17.] The Commissioner argues that the ALJ did not outright reject the GAF scores, but gave them little weight. In the end, there is a question in this Court's mind as to whether "the ALJ . . . discount[ed] Plaintiff's GAF scores simply because of the type of

15

evidence it represented." See Black v. Comm'r of Soc. Sec., Civil No. 19-17237 (NLH), 2020 U.S. Dist. LEXIS 146826, at *15 (D.N.J. Aug. 14, 2020). If that was the case, doing so was improper and would require remand, as a GAF score, despite no longer being utilized in some contexts, still must be "assessed as all other record evidence." Id.; see also Hughes v. Comm'r of Soc. Sec., 643 F. App'x 116, 119 (3d Cir. 2016). Therefore, because the Court is remanding on other issues, the ALJ's dismissal of the GAF scores should also be addressed on remand.

**V.   CONCLUSION**

**ACCORDINGLY**, it is on this **22nd** day of **July** 2021,

**ORDERED** that the decision of the Administrative Law Judge is **VACATED** and the case is **REMANDED** for further proceedings consistent with this Memorandum Opinion; and it is further

**ORDERED** that the Clerk of the Court shall **CLOSE THIS CASE.**

s/Renée Marie Bumb
RENÉE MARIE BUMB
United States District Judge